**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

SHIVA STEIN,                                          :
                                                      :
          Plaintiff,                    :   Civil Action No. 1:21-cv-4126
                                                      :
v.                                                    :   **COMPLAINT FOR VIOLATIONS OF**
                                                      :   **SECTIONS 14(a) AND 20(a) OF THE**
MSG NETWORKS INC., JAMES L.                           :   **SECURITIES EXCHANGE ACT OF**
DOLAN, CHARLES F. DOLAN, AIDAN J.                     :   **1934**
DOLAN, KRISTIN A. DOLAN, PAUL J.                      :
DOLAN, THOMAS C. DOLAN, WILLIAM                       :   **JURY TRIAL DEMANDED**
J. BELL, JOSEPH M. COHEN, JOSEPH J.                   :
LHOTA, JOEL M. LITVIN, STEPHEN                        :
MILLS, HANK J. RATNER, BRIAN G.                       :
SWEENEY, and JOHN L. SYKES,                           :
                                                      :
          Defendants.                   :
---------------------------------------------------------

      Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

      1.      This is an action brought by Plaintiff against MSG Networks Inc. ("MSG Networks

or the "Company") and the members MSG Networks' board of directors (the "Board" or the

"Individual Defendants" and collectively with the Company, the "Defendants") for their violations

of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15

U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in

connection with the proposed merger between MSG Networks and MSG Entertainment Corp. and

its affiliates ("MSG Entertainment").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on May 6, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Broadway Sub Inc., a wholly owned subsidiary of MSG Entertainment, will merge with and into MSG Networks with MSG Networks surviving as a direct wholly-owned subsidiary of MSG Entertainment (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each MSG Networks stockholder will receive 0.172 of a share of MSG Entertainment stock (the "Merger Consideration").

3.      As discussed below, Defendants have asked MSG Networks' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, LionTree Advisors LLC ("LionTree") and Morgan Stanley & Co. LLC ("Morgan Stanley" and together with LionTree, the "Financial Advisors"), in support of their fairness opinions.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to MSG Networks' stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because MSG Networks is headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of MSG Networks stocks and has held such stocks since prior to the wrongs complained of herein.

10.      Individual Defendant James L. Dolan has served as a member of the Board since July 2009 and is also MSG Entertainment's Executive Chairman and Chief Executive Officer.

11.      Individual Defendant Charles F. Dolan has served as a member of the Board since July 2009 and is also a member of the board of MSG Entertainment.

12.     Individual Defendant Aidan J. Dolan has served as a member of the Board since June 2020.

13.     Individual Defendant Kristin A. Dolan has served as a member of the Board since April 2018.

14.     Individual Defendant Paul J. Dolan has served as a member of the Board since September 2015.

15.     Individual Defendant Thomas C. Dolan has served as a member of the Board since February 2010.

16.     Individual Defendant William J. Bell has served as a member of the Board since September 2015.

17.     Individual Defendant Joseph M. Cohen has served as a member of the Board since June 2020.

18.     Individual Defendant Joseph J. Lhota has served as a member of the Board since December 2016.

19.     Individual Defendant Joel M. Litvin has served as a member of the Board since September 2015.

20.     Individual Defendant Stephen Mills has served as a member of the Board since October 2020.

21.     Individual Defendant Hank Ratner has served as a member of the Board since September 2015.

22.     Individual Defendant Brian G. Sweeney has served as a member of the Board since February 2010.

23.     Individual Defendant John L. Sykes has served as a member of the Board since August 2015.

24.     Defendant MSG Networks a Delaware corporation and maintains its principal offices at 11 Pennsylvania Plaza, New York, New York 10001.  The Company's stock trades on the New York Stock Exchange under the symbol "MSGN."

25.     The defendants identified in paragraphs 10-23 are collectively referred to as the "Individual Defendants" or the "Board."

26.     The defendants identified in paragraphs 10-24 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     __The Proposed Transaction__

27.     MSG Networks engages in the sports production, and content development and distribution businesses in the United States. The Company owns and operates MSG Network and MSG+, which are regional sports and entertainment networks. It also operates MSG GO that provides video on demand, as well as a website and social media platforms for its brands. The company was formerly known as The Madison Square Garden Company and changed its name to MSG Networks Inc. in October 2015. MSG Networks was founded in 1969 and is based in New York, New York.

28.     On March 26, 2021, the Company and MSG Entertainment jointly announced the Proposed Transaction:

> NEW YORK--(BUSINESS WIRE)--Madison Square Garden Entertainment Corp. ("MSG Entertainment") (NYSE: MSGE) and MSG Networks Inc. ("MSG Networks") (NYSE: MSGN) today announced they have reached a definitive agreement for MSG Entertainment to acquire MSG Networks in an all-stock, fixed exchange ratio transaction.

The merger is expected to be tax-free for both MSG Entertainment and MSG Networks and their stockholders. Upon the closing of the transaction, MSG Networks stockholders would receive 0.172 shares of MSG Entertainment Class A or Class B common stock for each share of MSG Networks Class A or Class B common stock they own. The exchange ratio is approximately 4% above the ratio of the unaffected closing stock prices of the two companies on March 10, 2021, the last trading day before a press report speculated on a potential transaction.

This transaction would create a leading entertainment and media company with a more diversified revenue base that would be well positioned to deliver innovative experiences across all of its assets. The combined company would have a stronger liquidity position to support its live entertainment business, which following the shutdown of its venues due to the pandemic, is now on a path back to normal operations. In addition, the new company would have enhanced financial flexibility to fund current growth initiatives, including its planned state-of-the-art venue in Las Vegas, MSG Sphere at The Venetian, as well as future opportunities across both entertainment and media.

With the acquisition of MSG Networks, MSG Entertainment anticipates it would capture more of the emerging revenue opportunity related to the potential expansion of legalized sports gaming in its market. The combination of the companies' media, digital and venue assets creates a powerful platform for potential sports gaming partners, which is expected to generate significant incremental revenue in the years ahead.

MSG Entertainment President Andrew Lustgarten said: "MSG Entertainment is actively executing a plan designed to grow the Company beyond its established collection of assets into one that is pioneering the next generation of entertainment. We have always believed in the value of live sports and look forward to welcoming MSG Networks back into the fold as part of a transaction that we are confident would enhance our financial flexibility and set the stage for continued growth and value creation."

MSG Networks President and CEO Andrea Greenberg said: "We anticipate significant benefits from rejoining MSG Entertainment, including creating a combined company with greater diversification and resources. This would, in turn, help drive new innovative opportunities across both the entertainment and media businesses,

ultimately creating significant value for our collective shareholders."

In addition to forming a diversified company with enhanced financial flexibility, it is anticipated that the combined company would realize meaningful tax efficiencies. As of December 31, 2020, MSG Entertainment had a federal net operating loss (NOL) of approximately $250 million, primarily due to the temporary shutdown of its venues as a result of COVID-19. Furthermore, MSG Entertainment expects to accelerate the depreciation of significant components of the capital investment for MSG Sphere in Las Vegas in calendar 2023, which is when the venue is expected to open. As a result of this transaction, the combined company would be able to more efficiently utilize MSG Entertainment's existing NOL, as well as future bonus depreciation related to MSG Sphere in Las Vegas, to offset the taxable income of all of its businesses, including MSG Networks, which today is a full state and federal income tax cash payer.

MSG Networks is a leader in sports content development and distribution that generates significant revenue, adjusted operating income, and free cash flow.[1] For fiscal year 2020, MSG Networks generated revenue of $685.8 million, operating income of $295.0 million, adjusted operating income of $321.4 million, net cash provided by operating activities of $210.0 million, and free cash flow of $207.2 million. The media company's two networks, MSG Network and MSG+, operate in the nation's number one media market, the New York DMA, as well as other portions of New York, New Jersey, Connecticut and Pennsylvania. The networks deliver exclusive live local games of the New York Knicks, New York Rangers, New York Islanders, New Jersey Devils and Buffalo Sabres, as well as significant coverage of the New York Giants and Buffalo Bills.

While MSG Networks continues to operate in an evolving media landscape, the Company reported for its fiscal 2021 second quarter a sequential improvement in its year-over-year rate of subscriber decline, which has continued to improve so far during the fiscal 2021 third quarter.[2] And with the 2020-21 NBA and NHL seasons, MSG Networks is currently enjoying significant year-over-year increases in viewership for both its linear networks and MSG GO streaming app, which helps drive the Company's advertising revenue.

MSG Entertainment's portfolio features iconic venues, including Madison Square Garden; production assets such as the Radio City Rockettes and the Christmas Spectacular and a majority interest in Tao Group Hospitality.

MSG Entertainment is actively pursuing its vision for MSG Sphere – new, state-of-the-art venues that will reinvent the entertainment experience. Construction is well underway on MSG Sphere in Las Vegas, and the Company continues to pursue its plans for an additional MSG Sphere in London, pending necessary approvals.

The definitive agreement was exclusively negotiated and unanimously approved by Special Committees of MSG Entertainment's and MSG Networks' boards, both of which are comprised entirely of independent directors. The agreement was also unanimously approved by the Boards of Directors of both MSG Entertainment and MSG Networks.

The transaction is subject to approval by a majority of the combined voting power of the outstanding shares of MSG Networks Class A common stock and Class B common stock. MSG Entertainment's issuance of its common stock in the transaction is subject to approval by a majority of the combined voting power of the votes cast by the holders of shares of MSG Entertainment Class A common stock and Class B common stock and, separately, the issuance of MSG Entertainment Class B shares must be approved by the holders of not less than 66 2/3% of the voting power of the outstanding shares of MSG Entertainment Class B common stock. The Special Committee of the Board of Directors of MSG Networks, and the full board, based on the recommendation of the MSG Networks Special Committee, have each recommended that MSG Networks stockholders adopt the merger agreement. The Special Committee of the Board of Directors of MSG Entertainment, and the full Board, based on the recommendation of the MSG Entertainment Special Committee, have each recommended that MSG Entertainment stockholders approve the issuance of MSG Entertainment common stock required for the transaction.

The holders of all of the outstanding shares of MSG Networks Class B common stock and MSG Entertainment Class B common stock, who have sufficient votes to approve the transaction, have entered into voting agreements pursuant to which they have agreed to vote all of the MSG Networks Class B common stock and MSG Entertainment Class B common stock in favor of the adoption of the

merger agreement and the issuance of MSG Entertainment common stock required for the transaction, respectively.

The transaction, which is also subject to customary closing conditions, is expected to be completed during the third quarter of calendar 2021. Upon the closing of the transaction, a current director of MSG Networks elected by the holders of its Class A common stock would be appointed as a director of MSG Entertainment.

Moelis & Company LLC and The Raine Group are serving as independent financial advisors and Wachtell, Lipton, Rosen & Katz is serving as independent legal counsel to the Special Committee of the Board of Directors of MSG Entertainment. LionTree Advisors LLC and Morgan Stanley & Co. LLC are serving as independent financial advisors and Davis Polk & Wardwell LLP is serving as independent legal counsel to the Special Committee of the Board of Directors of MSG Networks. Debevoise & Plimpton LLP is serving as legal counsel to the Dolan family.

\* \* \*

29.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that MSG Networks' stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

30.     On May 6, 2021, MSG Networks and MSG Entertainment jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning

whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

31.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the Financial Advisors in their analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and "MSG Entertainment Projections") and provided them to the Board and the Financial Advisors by management of both MSG Networks and MSG Entertainment with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

32.     For the Company Projections, the MSG Entertainment Projections, and the MSG Entertainment's Adjustments to the MSG Networks Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2025: Adjusted Operating; Free Cash Flow for MSG Entertainment; and Free Cash Flow From Operations for MSG Networks as calculated by each of the Company's and MSG Entertainment's financial advisors, but fails to provide line items used to calculate these

metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

33.     When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

34.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

35.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

36.     The Registration Statement also fails to include prospective net income information. This is a blatant omission when net income is mentioned numerous times elsewhere in the Registration Statement, rendering all references to net income incomplete information.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

37.     With respect to the Financial Advisors' *Selected Publicly Traded Companies Analysis* for the Company, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by the Financial Advisors in the analysis.

38.     With respect to the Financial Advisors' *Discounted Cash Flow Analysis* for the Company, the Registration Statement fails to disclose: (i) line items to the Company's Unlevered Cash Flow for fiscal years 2022 through 2025; (ii) the terminal values of MSG Networks as of December 31, 2025; and (iii) the inputs and assumptions underlying the discount rates ranging from 6.0% to 7.0%.

39.     With respect to the Financial Advisors' *Selected Publicly Traded Companies Analysis* for MSG Entertainment, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by the Financial Advisors in the analysis.

40.     With respect to the Financial Advisors' *Discounted Cash Flow Analysis* for MSG Entertainment, the Registration Statement fails to disclose: (i) line items to the MSG Entertainment's Unlevered Cash Flow for fiscal years 2022 through 2025; (ii) the terminal values of MSG Entertainment as of December 31, 2025; (iii) the inputs and assumptions underlying the discount rates ranging from 7.25% to 8.25% used by LionTree and 7.29% to 8.49% used by Morgan Stanley and the reason why each Financial Advisor had different discount rates ranges; (iv) the basis for applying a multiple of 13.5x to Tao Group Hospitality's calendar year 2022

estimated AOL; (v) the basis for applying a discount rate of 8.6% cost of equity to net operating

tax losses; and (vi) the basis for applying a multiple of 18.0x to BCE's calendar year 2022

estimated AOL to calculate BCE minority interest.

41.    With respect to the Research Analysts' Price Targets analysis, the Registration

Statement fails to disclose: (i) the basis for using the cost of equity discount of 7.79% for Morgan

Stanley and 8.60% for LionTree for MSG Networks, and 8.6% for both Financial Advisors; (ii)

the price targets observed; and (iii) the research analysts referenced.

42.    With respect to Morgan Stanley's engagement as the Company's financial advisor,

the Registration Statement fails to disclose the amount of compensation received by Morgan

Stanley from the Company and AMC Networks Inc. (an affiliate of MSG Entertainment and the

Company) for financing services and the amount of compensation received by Morgan Stanley for

financial advisory services to the Special Committee in connection with prior discussions

involving a strategic transaction with MSG Entertainment.

43.    In sum, the omission of the above-referenced information renders statements in the

Registration Statement materially incomplete and misleading in contravention of the Exchange

Act.  Absent disclosure of the foregoing material information prior to the special stockholder

meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed

decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened

with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

47.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

48.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes

negligence.   Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.   Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

49.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.   Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## <u>COUNT II</u>

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of MSG Networks within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as directors of MSG Networks, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of MSG Networks, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of MSG Networks, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

54.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 7, 2021                              **MELWANI & CHAN LLP**

By:  */s/ Gloria Kui Melwani*

17

Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*